UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HECTOR SANCHEZ SANCHEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:25-cv-00553-JRS-MG |
| | ) |
| DONALD J. TRUMP, | ) |
| KRISTI NOEM, | ) |
| MARCO RUBIO, | ) |
| PAMELA BONDI, | ) |
| TODD M. LYONS, | ) |
| BRISON SWEARINGEN, | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS
CORPUS AND DIRECTING FURTHER PROCEEDINGS**

Petitioner Hector Sanchez Sanchez is detained at the Clay County Jail in Brazil, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He petitions for immediate release or, in the alternative, a bond redetermination hearing pursuant to 8 U.S.C. § 1226(a). The crux of his petition is that the only statute authorizing his detention makes him eligible for bond and that Respondents' refusal to consider bond makes his continued detention unlawful. The government argues in response that Petitioner's detention is lawful, that it does not violate due process, and that the only available remedy, if any, is a bond hearing.

Collectively, the parties' submissions demonstrate that Petitioner is statutorily eligible for bond and that his continued detention without a bond hearing is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the petition is granted.

**I. Facts**

Petitioner is a citizen of Mexico and entered the United States without inspection in 2008. He now lives in Illinois with his U.S. citizen wife and two U.S. citizen children. Dkt. 1 at 5. On

October 9, 2025, he was detained with one of his employees while driving to his business. *Id*. at 6. On October 23, Petitioner moved for a bond determination hearing before the immigration judge ("IJ"), who declined to hear the motion on the merits for lack of jurisdiction. *Id*. at 7-8.

## II. Eligibility for Bond

Petitioner contends that the government's authority to detain him derives from 8 U.S.C. § 1226(a), which states, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [P]ending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on [. . .] bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or [. . .] conditional parole.

The government, however, argues that they are authorized to detain him under 8 U.S.C. § 1225(b)(2)(A), which states: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a" removal proceeding. The Board of Immigration Appeals ("BIA") provided its analysis of this authority as follows:

> Aliens, like the respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission." *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (2018) (defining "admission"). Likewise, being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission. Therefore, just as Immigration Judges have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years.

*Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025).

The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )." 8 U.S.C. § 1225(a)(1). Respondents rely on *Dep't of Homeland Sec'y v. Thuraissigiam,* 591 U.S. 103, 108–109 (2020), for the proposition that all unadmitted aliens present in the United States are "applicants for admission." *See* dkt. 8 at 9. In that case, the Court held that a noncitizen apprehended 25 yards from the border and seeking admission as an asylee was not entitled to habeas relief. *Thuraissigiam*, 591 U.S. at 107. The legal and factual context in *Thuraissigiam*, however, are different from those presented here. *Thuraissigiam* makes the distinction clear:

> While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. Respondent attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural rights other than those afforded by statute.

*Id*. (internal citations omitted).

The district court cases upon which Respondents rely draw heavily from the reasoning in *Yajure Hurtado*, a non-binding decision that—deviating from longstanding practice—endorsed detentions pursuant to § 1225(b) rather than § 1226(a), reasoning which this Court has not adopted. *See*, *e.g.*, *Singh v. Bondi, et al.*, No. 1:25-CV-02101-SEB-TAB, 2025 WL 3029524, at *4-*6 (S.D. Ind. Oct. 30, 2025); *Alejandro v. Olson*, No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025); *B.D.V.S. v. Forestal*, No. 1:25-CV-01968-SEB-TAB, 2025 WL 2855743, at *2 (S.D. Ind. Oct. 8, 2025).

Respondents' argument that § 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive. As the analysis in *Alejandro*, 2025 WL 2896348, at *14-

19, explains, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. Respondents have adduced no binding precedent to the contrary that would make necessary the Court's engaging in this analysis anew.

In this case, the Respondents' actions and their representations to Petitioner demonstrate that his detention is governed by § 1226, and detention pursuant to § 1225 was, therefore, incorrect. According to ICE's own documents, Petitioner was an alien arrested and detained pursuant to a warrant. Dkt. 8-1 at 5. After his arrest, a DHS official issued a notice to appear directing him to appear before an immigration judge. *See id*. at 2-3. The notice identifies Petitioner as "an alien present in the United States who has not been admitted or paroled," not as "an arriving alien." *Id*. at 2. The notice does not identify Petitioner as an applicant for admission. *Id.* These factual circumstances reinforce the finding that he is eligible for bond under the plain language of § 1226(a). *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions.").

### III. Fifth Amendment Due Process

Under the heading, "Continued Detention is Reasonable," the respondents argue that continued detention does not implicate Petitioner's Fifth Amendment Due Process protections and offer the following:

> ICE can lawfully detain the Petitioner because he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). To the extent he is making a due process claim in his petition, it should be rejected because he has not been detained longer than six months, thus his continued detention is reasonable under *Demore* [*v. Kim*, 538 U.S. 510, 528

4

>
> (2003)] (explaining that detention during removal proceedings is a necessary part of removal proceedings); *see also Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (holding post-removal that Government cannot detain an alien "indefinitely," limiting "post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States" and finding a detention period of six months is "presumptively reasonable."). Here, the Petitioner has only been detained since October 12, 2025, so there are no due process concerns.

Dkt. 8 at 11-12.

The respondents' argument is misplaced. Petitioner does not deny that the government has authority to charge him as removable, arrest him, and detain him during the pendency of his removal proceedings. He argues—correctly—that, within that process, he is eligible to request bond, the Attorney General has discretion to grant it, and the continuing failure to provide a bond hearing violates his rights. The Respondents' position and Petitioner's are not mutually exclusive.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment*." Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. 678 at 690.

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews*. The court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

5

Applying this analysis, Petitioner's detention without a bond hearing violates procedural due process. Petitioner has a cognizable private interest in being freed from unlawful detention without any opportunity for a bond hearing. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (explaining that one of the "most elemental of liberty interests" is to be free from detention). There is a severe risk of erroneous deprivation because a hearing would require the IJ to make an individualized determination evaluating dangerousness and flight risk. Given that an IJ has not made this determination, Petitioner's current detention might well be erroneous. Last, the government's interest is slight insofar as an IJ has *not* determined that Petitioner poses a flight risk or a danger to the community. As other courts have concluded in cases involving similar factual circumstances, Petitioner's detention without a bond hearing amounts to a due process violation. *See, e.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *4 (finding detention under § 1225(b)(2) without a bond hearing to violate petitioner's due process rights); *Lopez Benitez*, 2025 WL 2371588, at *13; *Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819, at *11 (D. Mass. Sept. 5, 2025) ("In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that his detention without a bond hearing violates his Due Process rights.").

### IV. Conclusion and Further Proceedings

Petitioner seeks a writ of habeas corpus requiring the Respondents to release him immediately or afford him a bond hearing. Dkt. 1 at 4. The Court has found, as explained in Part II, that Petitioner's detention is governed by 8 U.S.C. § 1226(a), he is therefore eligible for (although not necessarily entitled to) bond, and the government's failure to provide a bond hearing, based on detention pursuant to § 1225, was factually and legally incorrect, making his current detention "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. §

2241(c)(3), and entitling him to a writ of habeas corpus. A bond hearing must be conducted forthwith, or Respondents must release Petitioner from custody.

The petition for a writ of habeas corpus is **granted**. The Court **declares** that Petitioner's continued detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225, 1226 and/or the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Respondents will have **eleven days from the entry of judgment** to notify the Court that they have either provided Petitioner a bond hearing, affording him all proceedings and rights provided by § 1226 and its corresponding regulations, and that his claim for release on bond has been heard and considered on the merits or that they have released him from custody.

The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 11/26/2025

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record